IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN WEAVER, | CASE NUMBER: |
| Plaintiff, v. | Jury Trial Requested |
| SHASTA SERVICES, LLC, | |
| Defendant, | |

## COMPLAINT

AND NOW COMES, the Plaintiff, John Weaver by and through his attorney, Sharon L. Wigle,

complaining of the Defendant, alleges and says:

**PARTIES**

1. Plaintiff John Weaver resides at 15283 Strader Road, East Liverpool, Ohio 43920.

2. Defendant Shasta Services LLC is a corporation formed with a principal place of business in Beaver County in the state of Pennsylvania with its principal place of business located at 300 Steel Street, Aliquippa, Pennsylvania 15001.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to § 931. Original jurisdiction and venue, as courts of common pleas in Pennsylvania have unlimited original jurisdiction except where jurisdiction has been placed in another Pennsylvania court.

4. This Court has personal jurisdiction over defendant Shasta Services which is located in Beaver County, Aliquippa, Pennsylvania 15001.

5. Venue is proper in this Court pursuant to Rule 2179. Venue in an Action Against a Corporation or Similar Entity, as defendant Shasta Services regularly conducts business in Beaver County and/or the cause of action arose in Beaver County.

**STATEMENT OF FACTS CHRONOLOGY**

• **2023**-------------------------------------------------------------------------------------------

6. **June 1:** During a formal maintenance audit of Defendant Shasta Services' production facility in Aliquippa, Pennsylvania, Mike Dowdy, Area Maintenance Manager for TMS International, identified a Lock Out/Tag Out (LO/TO) cardinal rule safety violation, noting that LO/TO procedures were not being performed by Grinder Operators on Grinding Machines while making grinding wheel changes.

7. **December 1:** Defendant Shasta Services offered, and Plaintiff John Weaver accepted a full-time position as Site Plant Manager with a starting salary of $120,000.00 (thousand dollars) per year plus additional benefits with an effective start date of January 1, 2024.

8. **December 31:** Plaintiff John Weaver resigned employment from McDanel Advanced Ceramic Technologies to join Defendant Shasta Services.

• **2024**-------------------------------------------------------------------------------------------

9. **January 1:** John Weaver officially commenced employment with Defendant Shasta Services as the Aliquippa, Pennsylvania, Site Plant Manager.

10. **January 3**: Allison Cunningham, Human Resources Manager, TMS International, telephoned Plaintiff and asked if the birth date on his onboarding documents were correct because the date listed would put him over the age of seventy.

11. **January 4:** Mark Snyder, Operations Manager at Shasta Services told Plaintiff that he (John Weaver) should be retired, and that he (Mark Snyder) was considering retiring soon. Mr. Snyder followed up and said, "You are one of the oldest employees here. If they want to get rid of you, they'll find a reason. If not, they'll make one up. If they treat you different, what can you do about it?"

12. **Mid-January:** Plaintiff attended a TMS International safety conference along with Ty Reynolds, Vice President of Operations, TMS International. During the lunch break, Mr. Reynolds asked plaintiff about his age in hearing range of several other TMS International Site Leaders. When Plaintiff responded 71 years old, Mr. Reynolds asked why Plaintiff was working past normal retirement age.

13. **June 1**: Shasta Services' Maintenance Manager, Terry Wilfong, suggested getting a "mock audit" scheduled to prepare for an upcoming formal TMS Maintenance Internal Audit by Mike Dowdy, and got the "mock audit" scheduled for July 17, 2024.

14. **July 1**: Shaun Mienke, Senior Vice President, TMS International held a meeting at Shasta Services to discuss the implementation of LO/TO procedures on Grinding Machines, leading to Mr. Mienke's decision to install hasps on Grinding Machine doors and to train operators on LO/TO. It was later determined in discussions with Mike Dowdy that simply installing hasps on Grinding Machine doors was not sufficient to protect Grinder Operators from the stored energy in the heads of the Grinding Machines, and that the proper method of LO/TO was to shut down these Machines at the main power source and perform lock out and tag out there.

15. **July 17 Morning**: Mike Dowdy, Area Maintenance Manager for TMS International, arrived at Shasta Services, and rather than performing a "mock audit" to identify areas of concern that needed to

be corrected, actually performed a formal TMS Maintenance Internal Audit that identified safety violations related to LO/TO procedures on the Grinding Machines at Shasta Services.

16. **July 17 10:30am:** Mike Dowdy came to Plaintiff John Weaver's office and announced that, "we need to shut down the Grinding Machines. They are not using Lock Out/Tag Out during wheel changes."

17. **July 17 10:45am:** Plaintiff John Weaver immediately organized a meeting with Mr. Dowdy, Karl Miller (Shasta Services' Operations Manager), and Terry Wilfong (Shasta Services' Maintenance Manager) to discuss how to quickly get Lock Out/Tag Out procedures implemented until Grinder Operators' training was completed. The result of the meeting was that Shasta Services would utilize Maintenance employees, who were all previously trained in LO/TO and used it on all equipment within the Shasta Services facility, to temporarily perform the necessary LO/TO on Grinding Machines until Grinder Operators' training was completed.

18. **July 17 11:00am:** Mike Dowdy, held a meeting in Shasta Services Training Room with Plaintiff, Terry Wilfong, Karl Miller, Grinder Operators, Fork Lift Drivers, and Maintenance personnel to discuss his Maintenance Audit finding of Shasta Services not utilizing LO/TO procedures on Grinding Machines, and to review with all attendees the procedures to use LO/TO on Grinding Machines until Grinder Operators could be properly trained. Mr. Dowdy began the meeting with the statements: "First off, nobody's in trouble. So, don't think anyone is in trouble."

19. **July 17 11:30am:** Plaintiff John Weaver, Mike Dowdy, Terry Wilfong, and Karl Miller proceeded to the plant production area to observe the implementation of LO/TO procedures on Grinding Machines. Grinder Operators and Maintenance personnel immediately began to properly perform LO/TO on the Grinding Machines during wheel changes and continued through the balance of that day.

20. **July 17 2:00pm**: Shaun Mienke, Senior Vice President, TMS International, entered Plaintiff John Weaver's office and told him he was terminated from his position as Site Plant Manager, with the stated reason being failure to follow LO/TO procedures on Grinding Machines. Plaintiff John Weaver told Mr. Mienke that Grinder Operators, with the assistance of Maintenance personnel, commenced following LO/TO procedures on the Grinding Machines earlier that morning.

21. **July 18**: Less than 24 hours after Plaintiff's termination, Shasta Services and TMS International decided that Lock Out/Tag Out procedures were not necessary for the Grinding Machines and immediately discontinued the LO/TO procedures for wheel changes on Grinding Machines that commenced at 11:30am July 17, 2024.

22. **July 18**: John Weaver alleged that his termination was due to age discrimination as: younger employees responsible for the same LO/TO procedures cited by Mike Dowdy, Area Maintenance Manager, TMS International, while performing internal Maintenance Audit at Shasta Services in June 2023 were not discharged and were not disciplined; and, Shasta Services and TMS International reversed their decision that LO/TO was necessary on Grinding Machines less than twenty-four hours after Plaintiff's termination.

23. **July 30**: John Weaver successfully filed for unemployment compensation from the State of Pennsylvania, disputing Shasta Services' reasons for his termination related to Grinding Machines not

using LO/TO procedures. Shasta Services did not refute Plaintiff's disagreement with Shasta Services' reason for termination, and did not appeal the decision of the State of Pennsylvania to grant Plaintiff unemployment compensation.

- **2025**--------------------------------------------------------------------------------------------

24. **January 10**: John Weaver timely filed a charge of age discrimination with the EEOC against Defendant Shasta Services, LLC.

25. **February 14**: Shasta Services filed a Position Statement to the Equal Employment Opportunity Commission in response to the Charge of Discrimination filed by Plaintiff.

26. **March 10**: John Weaver timely submitted a rebuttal to the EEOC regarding Shasta Services' position statement on his termination.

27. **April 7**: The EEOC issued a Determination and Notice of Rights, dismissing John W. Weaver's charge of Shasta Services violating the Age Discrimination in Employment Act (ADEA), and informing him of his right to file a lawsuit within 90 days of receipt of this notice.

**CLAIMS FOR RELIEF**

**Count I - Age Discrimination in Violation of** [§ 954. Definitions](against defendant Shasta Services, LLC)

28. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29. Plaintiff is 40 years of age or older.

30. Plaintiff was one of the oldest employees hired by Shasta Services.

31. Plaintiff was qualified for the Site Plant Manager position.

32. Plaintiff was an excellent Site Plant Manager and cared about safety in his role, creating a weekly safety walkthrough to identify and correct safety issues, and improving the safety incident rate from 12 incidents for calendar year 2023 (the year prior to Plaintiff's employment), to 2 incidents for January through July 2024.

33. A TMS International Human Resources Manager telephoned Plaintiff and asked if the birthdate on his onboarding documents were correct because the date listed would put him over the age of seventy.

34. A TMS International Vice President of Operations inquired about Plaintiff's age in hearing range of other TMS International employees and asked why he would want to work past normal retirement age.

35. In a conversation with another TMS International Vice President, Shaun Mienke stated that Plaintiff, "is old as fuck so should know how to do that by this time in his career." Shaun Mienke told this same TMS International Vice President that he was going to get rid of Plaintiff John Weaver.

36. The Operations Manager at Shasta Services made a comment about Plaintiff's age, stating, "You are one of the oldest employees here. If they want to get rid of you, they'll find a reason. If not, they'll make one up. If they treat you differently, what can you do about it?"

37. Plaintiff John Weaver received no formal performance review during his tenure from Senior Vice President Shaun Mienke or any other senior staff of Shasta Services or TMS International. Mr. Weaver received no verbal discussions, phone calls, emails, texts, or documents from Mr. Mienke or any other senior staff of Shasta Services or TMS concerning his performance, or whether there were any issues relating to Shasta Services hourly employees not abiding by the Cardinal Rules or violating any Shasta Services or TMS rules and regulations.

38. Plaintiff suffered an adverse employment action.

39. Plaintiff was treated differently because of his age.

40. Plaintiff's termination was an inference of age discrimination.

41. The stated reason for Plaintiff's termination, a Lock Out/Tag Out violation, was clearly pretextual, as: Plaintiff corrected the LO/TO violation prior to his termination; Shasta Services and TMS International were advised of exactly the same Lock Out/Tag Out violation on the Grinding Machines in June 2023, prior to Plaintiff's employment, and took no actions to correct the violation or to discipline or discharge younger employees in responsible positions at Shasta Services and TMS International; and, less than 24 hours after Plaintiff's termination for violating Lock Out/Tag Out procedures on Grinding Machines, TMS International decided that Lock Out/Tag Out procedures on Grinding Machines were not necessary, immediately discontinuing the procedure on the Grinding Machines.

42. After Plaintiff's termination, Ryan Hurtak, Maintenance Manager at Shasta Services observed Lou Martin, Automation Engineering Manager at TMS International, and Evan Gossimer, Maintenance Tech at Shasta Services, working on an electrical box without using the prescribed Lock Out/Tag Out procedure, and thus violating that Cardinal Safety Rule. Mr. Hurtak asked a TMS International Vice President who also observed this violation to keep this quiet and that he would "take care of it." The TMS International Vice President reported the Cardinal Rule violation to Shaun Mienke and Mark Whelan, Executive Vice President, TMS International. Neither Lou Martin nor Evan Gossimer were terminated by Mr. Mienke or by Mr. Whelan like the Plaintiff. Both were simply given warnings. And Mr. Hurtak was not given any discipline for suggesting keeping the incident quiet. Further, Evan Gossimer, Maintenance Tech was promoted to Deputy Maintenance Manager about 6 weeks after the incident, despite having violated a cardinal safety rule by not isolating energy prior to working on equipment. All these individuals are much younger than Plaintiff John Weaver.

43. Plaintiff asserts the true and factual reason for his termination was age discrimination.

**Count II - Wrongful Termination** (against defendant Shasta Services, LLC)

44. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45. Defendant Shasta Services terminated Plaintiff's employment.

46. Plaintiff's termination was in violation of public policy.

47. Plaintiff's termination was based on age discrimination, which violates the public policy against age discrimination in employment as established by the EEOC and Pennsylvania Human Relations Act.

48. The stated reason for termination was pretextual.

49. Defendant Shasta Services claimed that Plaintiff was terminated for a Lock Out/Tag Out violation.

50. Plaintiff corrected the Lock Out/Tag Out violation prior to his termination and should not have been terminated for this reason.

51. Shasta Services and TMS International were advised of exactly the same Lock Out/Tag Out violation on the Grinding Machines in 2023, prior to Plaintiff's employment, and took no actions to correct the violation or to discipline or discharge younger employees in responsible positions at Shasta Services and TMS International.

52. July 18, 2024, less than 24 hours after Plaintiff's termination for violating Lock Out/Tag Out procedures on Grinding Machines, Shasta Services and TMS International decided that Lock Out/Tag Out procedures were not required on Grinding Machines and immediately discontinued the procedures that Plaintiff initiated on July 17, 2024.

53. The true reason for Plaintiff's termination was age discrimination.

**Count III – Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, (ADEA)** (against defendant Shasta Services, LLC)

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff suffered a hostile work environment with enduring offensive conduct from his immediate manager, Shaun Mienke, Senior Vice President, TMS International, such that it became a condition of continued employment, and the offensive conduct was so severe and pervasive that it created a work environment that any reasonable person would consider intimidating, hostile, and abusive.

56. Plaintiff never uses foul language and swear words in conversations at work or outside of work. When Shaun Mienke spoke to Plaintiff and other employees of Shasta Services and TMS International, it was his common practice to use foul language and swear words in every sentence exhibiting a hostile, bullying deportment and blatant disregard for others' rights and feelings.

57. Shaun Mienke frequently used foul language and swore in meetings and normal conversations with subordinates, managers, salaried employees, and hourly employees using words like "fuck, mother fucker, bull shit, bitch, cunt, jerk, and shit." Mr. Mienke has also used such language in email messages.

58. Shaun Mienke's frequent swearing and foul language permeated the entire organization at Shasta Services, leading other managers and employees to feel that speaking in the same manner was acceptable. Mr. Mienke's behavior became so pervasive and so engrained within the Shasta Services culture that these mores have inevitably evolved to generally accepted practices throughout Shasta Services, and to other organizations under Mr. Mienke's purview within the TMS International organization.

59. In a conversation with another TMS International Vice President, Shaun Mienke stated that Plaintiff: "is old as fuck so should know how to do that by this time in his career."

60. Shaun Mienke told this same TMS International Vice President that he was going to get rid of Plaintiff John Weaver.

61. Shaun Mienke did not support Plaintiff in his initiatives concerning safety, quality, productivity, or cost containment, and undermined his efforts in establishing safe work practices, initiating a 6S Program, holding monthly meetings with hourly employees, and creating a daily FLASH report. Mr. Mienke's normal response to such was that "it's a fucking waste of time and money."

62. Shaun Mienke excluded Plaintiff from critical decision making and withheld information that did not allow him the opportunity to execute his job effectively, including: holding private meetings with John Booher, Interim Facility Manager prior to Plaintiff's hiring and not including Plaintiff; not informing Plaintiff of employee hirings, terminations, promotions and layoffs until after completed; not inviting him to critical informational meetings affecting Shasta Services facility management; many visits to Shasta Services to talk with Plaintiff's subordinates without informing Plaintiff of his being on site or reason why; and, no notice of pending visits by other TMS International staff and customers.

63. Plaintiff did not feel comfortable making a complaint about Shaun Mienke's offensive conduct to human resources or to Mark Whelan because of his short tenure at Shasta Services and fear of retaliation and termination.

64. Plaintiff excelled as a Site Manager despite Shaun Mienke's egregious and offensive conduct and lack of support.

65. Defendant Shasta Services terminated Plaintiff's employment.

66. Plaintiff's termination was in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, (ADEA)

67. Plaintiff's termination was based upon age discrimination, which violates the public policy against age discrimination in employment as established by the EEOC and Pennsylvania Human Relations Act.

**Count IV- Retaliation**

68. . Plaintiff repeats and realleges that the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69. Plaintiff engaged in a protected activity.
70. Plaintiff was retaliated against because he properly performed his job for the Defendant.
71. Plaintiff suffered an adverse employment action for properly performing his job. Plaintiff

was terminated.

72. Plaintiff believes the real reason he was terminated was because of age discrimination, not because he violated the Lock Out/ Tag Out Rules.

73. Similarly situated employees that were younger than Plaintiff and not in Plaintiff's protected class were treated more favorably.

74. Plaintiff was harassed and humiliated in violation of the retaliation laws.

75. Plaintiff should not have been terminated by the Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Weaver prays for judgment against Defendant Shasta Services as follows:

A. For reinstatement to his former position as Site Plant Manager;

B. For back pay and benefits;

C. For compensatory damages for emotional distress in an amount to be determined at trial;

D. For punitive damages in an amount to be determined at trial;

E. For reasonable attorney's fees and costs pursuant to [§ 962. Construction and exclusiveness of remedy](#);

F. For pre-judgment and post-judgment interest as allowed by law;

G. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

                              Respectfully Submitted,

*Sharon L. Wigle, Esq.*

Sharon L. Wigle, Attorney at Law  Sharon Lawruler L.L.C
471 Hill Churches RD
Latrobe, PA 15650 (724) 420-0937
F-1-800-373-5652
Sharon@Lawruler.onmicrosoft.com
PA I.D.: 59964
Date: 07/03/2025

**VERIFICATION**

I verify that the facts set forth herein are true and correct to the best of my knowledge, information, and belief. I understand that both statements here in our made subject to the penalties of 18 Pa.C.S & 4903 relating to unsworn falsifications to authorities.

7/3/2025
DATE: _____

SIGNATURE: _John Weaver_ (DocuSigned by: 87BEC165E0684C5...)

**CERTICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within COMPLAINT was served upon all counsel of record via in person service and/or regular mail as follows:

SHASTA SERVICES, LLC
300 Steel Street
Aliquippa, Pennsylvania 15001

Respectfully Submitted,

*Sharon L. Wigle, Esq.*

Sharon L. Wigle, Esq.